Napton, judge,
delivered the opinion of the <su>nrt.
This was an information in the nature of a quo toarranto against Daniel P. Lewis, to ascertain his right to exercise the office of clerk of the county court of Platte county. The defendant pleaded that said Lewis, Mayo and one Waggoner, were candidates for the said affice, and that said Lewis and Mayo had an equal number of votes, Waggoner having less than either, and that the county court determined the tie in favor of Lewis. A demurrer was filed which the court sustained. The only question designed to be presented by this writ of error, is the *129 constitutionality of that provision of our election law which authorizes the county court to determine the election of their clerk in case of a tie.
The provision referred to is found in the eighth section of the act regulating clerks (Rev. Co. 201.) This section provides in relation to the election of these officers, that “ if there be a tie or contested election, it shall be determined by the court to which the office belongs.” It is suggested that a construction may be given to this provision which will avoid the question of its constitutionality entirely. The authority of determining in case of a tie, may be considered as identical with the power given in the same section of determining a contested election ; not as giving to the court a right to determine the tie by giving the casting vote, but simply the right judicially to determine that a tie exists, leaving the consequence of such a result to be settled by other provisions of the law and the constitution.
Such an interpretation of the phraseology used in this section, we apprehend, would only create new difficulties ; it is not easy to perceive how the courts could determine a tie in any other mode than by giving the casting vote.. The legislature obviously meant that in case of a tie, the court should put an end to the contest, and not merely declare that a tie existed and then refer the election back to the people, or leave the governor to appoint, as in case of a vacancy. The legislature might have been more specific in their language, as the framers of our constitution were in making a similar provision relative to the offices of sheriff and coroner, but their intention is sufficiently clear.
The objection to this provision of the election law is based upon its supposed incompatibility with that provision of the constitution contained in the third section of the amendments adopted in 1834, which provides that the clerksshall be' elected by the qualified voters of their respective counties, and shall hold their offices for the term of six years and until their successors are duly elected. It is thought that the power which the legislature have given to the courts of deciding an election in case of a tie by giving the casting vote, is utterly at varyance with the constitution which says that the clerks shall be elected by the people. This idea seems to result from a refinement in reasoning which loses sight of the spirit of the constitution and sticks very closely to the letter. Previous to the passage of these amendments, clerks of courts Were appointed by the courts. The amendments declared that thereafter they should be elected by the people. The difference between an election and an appointment is well understood. The word *130 election was used in the sense in which it had been used in various other provisions of our constitution and in which it was well understood by our people. It was not meant that an actual majority of the people or qualified voters of a country should be necessary to the election of a clerk, for we know that a very small minority may elect . It was not meant that a majority of those persons who actually voted should be necessary, for we know that according to our practice a bare plurality elects to all offices in this State. And yet it might be said, with some plausibility, that an election by a bare plurality of voters is not an election by the qualified voters of the county. In some of our sister States we know that a majority of the whole votes cast is considered necessary to an election. Yet the practice has never obtained in this State, and therefore we conclude, when the constitution or any legislative enactment provides for an election of our oíñcers, without specifically stating on what principles that election is to be conducted, that a plurality of votes elects, and that a majority of all the votes cast is not necessary to an election. Now, I can see nothing more inconsistent with the elective principle in allowing a selected tribunal in case of a tie vote, to give a casting vote, and thereby determine the election, than there is in allowing a small fraction of the people to elect when there happens to be several candidates, and the successful one has but a small minory of the whole votes cast. The power of giving a casting vote, in case of a tie, is entirely dissimilar to a power of appointing. In the latter case the appointing power is unlimited and unrestricted in its range of selection, except so far as the constitution or laws may have prescribed qualifications for the officer; in the former, the tribunal selected for the purpose merely decides between the individuals already designated by the popular voice as the choice. A and B have each an equal number of votes, and the court must vote for either A or B. It cannot select C, who was not a candidate, or, if a candidate, received a less number of votes than either A or B. If the court could, under such circumstances, select C, then this power would be a power of appointment, and inconsistent with the idea of an election. But the power of giving a casting vote is not a power of appointment, nor has it any of the ingredients of such a power. It is not, therefore, inconsistent with the elective principle, but, on the contrary, is a means judiciously provided by the legislature to carry out the intent of the constitution.
But aside from all argument on this subject, we think the framers of our constitution have themselves given us their opinion on this very *131 question. The constitution provides that sheriffs and coroners shall be elected by the qualified voters of their counties, and shall hold their offices for two years, and until a successor is appointed and qualified. In a subsequent clause to this provision, it is further provided that where two or more persons have an equal number of votes for said offices, and a higher number than any other person, the circuit courts of the counties shall “ give the casting vote, and all contested elections for said offices shall be decided by the circuit courts respectively.” This provision, although its phraseology is more explicit, is substantially the same, so far as sheriffs and coroners are concerned, with the legislative provision concerning clerks. Now it is strange that the constitution should first declare that sheriffs should be elected by the qualified voters, and then, in the next breath, should provide for the courts to give a casting vote in case of a tie, if this last power was incompatible with the elective principle. It is evident that the framers of the constitution did not so regard this provision. They saw nothing inconsistent or contradictory in the two provisions. They believed themselves to be carrying out the elective principle in providing for the determination of an election where the people or voters were equally divided. Such a contest must be determined in some way, and to send the election back might be, in effect, retaining the old incumbent. The same result might again happen, and so on ad infinitum, and so the old incumbent would hold on for life. A result greatly more at variance with the spirit of the constitutional provision than a determination of the contest by the casting vote of a court.
The constitution declares that the clerks of courts shall be elected by the qualified voters of the counties. It makes no provision for the case of a tie. Indeed, no details are given in relation to the mode or form of the election. These are left to the legislature. The legislature could not make provisions which would defeat the main purpose of the constitution, but they may make laws which will carry the general principle into effect. That the law now in question does not conflict with the general elective principle adopted by the constitution, • is proved By the example of the constitution itself, which in some instances has resorted to this very mode of determining an election in case of a tie, which is now so much objected to when enacted by the legislature. The practice in other States is also in conformity to the views entertained by our legislature, and such a practice would be entitled to weight in determining the constitutionality of such a law, if the question were even doubtful upon principle. But we entertain no *132 doubt of the propriety of such an enactment; and that it no wise conflicts with the constitution.
The other judges concurring, the judgment will be reversed and the cause remanded,