JAMES WEBSTER

*v.*

LAWRENCE H. GILMORE.

1. APPELLATE JURISDICTION—*in respect to contested election cases in county court.* The statute does not give the right of appeal from the county courts to the Appellate courts in contested election cases. In that class of cases an appeal lies from the county court directly to the Supreme Court.

2. ELECTIONS—*presumption of right to vote.* Where an election board permits a person to vote, that creates a *prima facie* presumption of his right to vote, which must be overcome by proof on a contest of the election.

3. SAME—*vote on separate piece of paper from ballot.* A vote for a candidate on a separate slip of paper folded within the numbered ballot deposited, not attached to the ballot in any way, is properly rejected, the statute requiring the names of all the candidates voted for to be upon the same ballot.

APPEAL from the County Court of Warren county; the Hon. ELIAS WILLETTS, Judge, presiding.

Messrs. PORTER & MOSHER, for the appellant.

Messrs. STEWART, PHELPS & GRIER, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

An election was held in the town of Spring Grove, in Warren county, in this State, on the 3d of April, 1877, at which Gilmore and Gulaw were each voted for as candidates for the office of supervisor of the town. On counting the vote at the close of the election each candidate was found to have received 139 votes. Lots were thereupon drawn, and Gilmore drew the successful lot, and entered upon the duties of the office. Webster (appellant) chose to become a contestant, and filed a written statement in the county court of that county within 30 days after Gilmore was declared elected, and, after answer and replication, the cause was heard at the October term, 1877, and judgment rendered in favor of appellee. From that judgment Webster appeals to this court and asks a reversal.

By the election law, jurisdiction is conferred on the county court to hear and adjudicate in contested elections for county officers, and an appeal is given to this court in the same manner and upon like conditions as is provided by law for taking appeals in cases in chancery from the circuit courts. Section 8 of the act creating Appellate courts (Sess. Laws 1877, p. 70,) allows appeals from and writs of error to the circuit courts or the Superior Court of Cook county or from city courts. Section 88 of the Practice act of the same session (Sess. Laws, p. 153,) only refers to the same courts in connection with appeals to or writs of error from the Appellate courts.

But the act of the 21st of May, 1877, (Sess. Laws, p. 77,) provides that "appeals and writs of error may be taken and prosecuted from the final judgments and decrees of the county courts to the Supreme Court or Appellate Court, should such a court be established by law, in proceedings for the sale of lands for taxes and special assessments, and in all common law and attachment cases and cases of forcible detainer and

forcible entry and detainer." Under this act, appeals and writs of error lie to bring cases of the character named to this court, but since the establishment of Appellate courts they lie to those courts. But it is seen that a contested election case is not provided for unless it is a common law case. Such cases were not know to the common law in the mode prescribed by the statute. Other actions and modes were resorted to for the purpose. But our statute has conferred the power on the county court, and prescribed the practice and given an appeal to this court. The appeal in this class of cases is not taken away by this act of 1877.

It follows, that the appeal in this case did not lie to the Appellate Court. The appeal was therefore properly brought to this court, and the questions raised by the assignment of errors are before us for consideration.

It is charged, in the petition filed in the county court for the recanvass of the vote, on the contest, that there were five persons, who were not legally qualified electors, who voted for appellee. The answer alleges that there were a number of illegal votes cast for Gulaw, and denies that illegal votes were cast for appellee. After hearing the evidence, the county court held that Gilmore was duly elected.

Appellee's counsel admit that Dennison and Wilson had not been in the county or township the requisite time previous to the election to entitle them to vote, and their votes should be deducted from those cast for Gilmore.

As to King and Boggess, who voted for Gilmore, it is claimed they did not have a sufficient residence to qualify them to exercise the privilege. They were permitted to vote by the election board, and that creates a *prima facie* presumption of their right. A careful examination of the evidence fails to satisfy us that the *prima facie* presumption has been overcome, and their votes were properly counted by the county court for Gilmore.

We find no evidence in the abstract as to any want of qual-

ification of Burns and there is no pretense for excluding his vote.

The evidence, we think, shows that Murphy, who voted for Gulaw, had not resided in the town thirty days next preceding the election, and the county court did right in rejecting his vote.

It then remains to determine whether the small slip of paper with Gulaw's name on it for supervisor, found folded in another slip of paper, was properly rejected on the contest in the court below.

Section 53 of the Election law is this: " The names of all candidates for which the elector intends to vote shall be written or printed upon the same ballot, and the office to which he desires each to be elected shall be designated upon the ballot."

Now, if the person depositing these two pieces of paper designed to vote for all the candidates named on each, then that was not a compliance with these provisions of the statute. The General Assembly has the power reasonably to regulate the manner in which each elector may exercise the elective franchise, and when he fails to comply with the requirements of the statute, his vote must, when contested, be thrown out as improperly received. The law is thus written and we can only enforce it.

The vote for Gulaw is not on the numbered piece of paper, nor does anything appear on either paper to indicate they were one, or intended to be one ballot. Had the two pieces of paper been pasted, pinned, or otherwise fastened together, then we could no doubt say they were one ballot, but they were not. Had the vote been *viva voce* for Gulaw, when the voter put in the numbered piece of paper, it would have been void as not conforming to the statute requiring it to be by ballot. If the voter had the legal right to place a slip of paper on which Gulaw's name was written, in a numbered piece of paper, he had the same right to deposit it separately, and if he had the right, all other voters at the election had the same right, and had they all exercised that privilege it would have

been, to say the very least, anomalous.   To so hold would lead to confusion, delay, and, it may be, to frauds on the elective franchise.

But, as we have seen, it is prohibited by the statute, and being so prohibited the vote should be rejected, and if rejected, it would leave each candidate with 137 votes, and a tie as before, and as it was a tie, the casting of lots decided it in favor of Gilmore, and the county court decided correctly.

The judgment of that court is affirmed.

*Judgment affirmed.*