THE STATE ex inf. CROW, Attorney-General, v. KRAMER.

In Banc, May 30, 1899.

150    89
s78a    60
150    89
152    516
152    517
150    89
f153    109

1. **Laws:** SPIRIT: INTERPRETATION.    The spirit of a law may be in. voked where a law has been passed which is ambiguous, in order to ascertain the meaning of the law-maker, but there must first be a law *on the subject* before the spirit and meaning can be invoked.

2. **Elections**: JUSTICES OF THE PEACE: TIE VOTE: DETERMINATION BY COUNTY COURT OR MAYOR. The statute (sec. 6099, R. S. 1889) which attempts to authorize county courts to decide in cases where "two or more persons shall have an equal number of votes for justice of the peace for any township," is unconstitutional, as is also the other statute which attempts to clothe the mayor with such power in cities of more than 300,000 inhabitants. (Overruling Lewis v. State ex rel. Mayo, 12 Mo. 128).

3. ———: ———: ———: ·——: NO ELECTION. Where two candidates for the office of justice of the peace have received the same number of votes, neither the county court, nor the mayor in cities of more than 300,000 population, has any authority to decide between them, the Constitution requiring such officers to be appointed or elected by the people.

## *Transferred from St. Louis Court of Appeals.*

JUDGMENT OF OUSTER ENTERED.

EDWARD C. CROW, Attorney-General, RICHARD T. BROWN-RIGG and JESSIE A. McDONALD for relator.

(1) Taking the official oath is a sufficient user of the office to support this proceeding to oust respondent therefrom. Rex v. Tate, 4 East 337; People v. Callaghan, 83 Ill. 128; State ex. rel. v. Meek, 129 Mo. 436. (2) Justices of the peace shall be elected in this State by ballot by qualified voters of the several townships and justice of the peace districts. Art. VIII, sec. 3, Constitution; Laws 1891, p. 175; sec. 6090, R. S. 1889. (3) The respondent must rely wholly on the strength of his title to the office, and not having been elected thereto by the qualified voters of the district, his right to hold the office must depend entirely upon the terms of the instrument issued to him by the mayor of the city of St. Louis; and that instrument, in turn, can be of no validity unless it is expressly authorized by a valid statute, and shows on its face a full compliance with all the requirements of the statute authorizing it. State v. Wilkinson, 23 Neb. 716; Beck v. Board of Elec. Coms., 61 N. W.

State ex inf. v. Kramer.

346; State ex .rel. v. McGann, 88 Mo. 390; State ex rel. v. Townley, 56 Mo. 107; State v. Adams, 2 Stew. 231; State ex rel. v. Vail, 53 Mo. 97; State ex rel. v. Mason, 77 Mo. 189; High Ex. Leg. Rem., sec. 229.

Fisse & Kortjohn for respondent.

(1) What is meant by the words "the county court shall decide the same," used in the connection in which they are found in the law? Is this manifest power given to a political officer or body of political officers to decide the election (if that is the fair meaning of these words, applied to the case of a tie vote at a popular election) inimical to any provision of the Constitution? Furthermore, these questions which might otherwise give considerable trouble, are answered in advance, by the Supreme Court not only with great fullness, but also with admirable precision, in the case of Lewis v. State ex rel. Mayo, 12 Mo. 128. In re-enacting the present section 6099, as has been regularly done by the legislature at every opportunity since the year 1835, the legislature intended the words, 'decide the same," to be understood in the sense given to this language in the Lewis case. The mayor of the city of St. Louis, therefore, had lawful authority to decide this election by giving a casting vote, as he did, in favor of this respondent, and thereby the election of this respondent was completely accomplished. (2) The duty to be performed in the exercise of the authority thus conferred by law upon the county court "to decide" an election is not a judicial duty, but an executive or ministerial function—merely a power to determine, i. e., end a tie by giving a casting vote. There is, therefore, no impropriety in the statute that transfers this duty to an executive officer because of the abolition of the body to whom this power was formerly given.

MARSHALL, J.—This is a proceeding by *quo warranto,* instituted in the St. Louis Court of Appeals, by the Attorney-General, in his official capacity, to oust respondent from the office of justice of the peace of the Fourth District of the city of St. Louis. The return of the respondent shows that at the general election in November, 1898, respondent and James Griffen were the only candidates for said office, and that the election resulted in a tie vote, each receiving 3766 votes; that the board of election commissioners certified this result to the circuit court, which in turn certified it to the mayor of that city, who commissioned respondent to said office. The power of the mayor is alleged to be complete under sections 6099 and 6092, R. S. 1889. The relator demurred to the return. The St. Louis Court of Appeals held that there is a constitutional question involved in the case, and hence certified the case to this court.

## I.

Respondent bases his right and title to the office in question upon the commission issued to him by the mayor of St. Louis, and claims that the mayor had full power to do so, under sections 6099 and 6092, R. S. 1889, and that section 6099 is a constitutional enactment as interpreted by this court in the case of Lewis v. State ex rel. Mayo, 12 Mo. 128.

The Constitution, sec. 37, Art. VI, provides: "In each county there shall be appointed, or elected, as many justices of the peace as the public good may require, whose powers, duties and duration in office shall be regulated by law."

The Constitution makes no provision for determining the election in case of a tie vote for justice of the peace, but the General Assembly has enacted section 6099, R. S. 1889, which is as follows: "Whenever two or more persons shall have an equal number of votes for justices of the peace for any township, or there is a contested election, the county

court shall decide the same." The General Assembly by section 6092, R. S. 1889, divided the city of St. Louis into fourteen districts for the election of justices of the peace, and provided: "And all powers and duties now conferred by law on the county court and county clerk, respectively, relating to justices of the peace, shall, in the city of St. Louis, be vested in the mayor and city register," etc., and it is claimed that as the power to "decide" in case of a tie between two candidates for justice of the peace is vested in the county court, by section 6099, and as the powers and duties of the county courts relating to justices of the peace, is, in St. Louis, vested in the mayor, by section 6092, the mayor had full authority to decide the tie by appointing respondent, and that section 6099 has been held to be a constitutional enactment in the Lewis case, cited.

Similar questions have arisen in other jurisdictions, to which reference is here made to throw light upon the constitutional and statutory provisions in our State hereinafter discussed.

In Indiana the Constitution provides that all elections shall be by ballot (Const., Art. 2, sec. 13). The statutes (sec. 4736, R. S. 1881) provide that in case of a tie, the judges of election shall *determine by lot the person entitled to the office.*" This statutory provision has been held constitutional, and not violative of the provision of the Constitution requiring all elections to be by ballot. [Johnston v. State ex rel. Sefton, 126 Ind. 16; Wills v. State ex rel. Hughes, 128 Ind. 359; Kimerer v. State ex rel. Block, 129 Ind. 589. Consult, also, State ex rel. Clifford v. McMullen, 46 Ind. 307].

In Oregon the statute provides that in case of a tie, it shall be settled by lot. In Dunham v. Hyde, 30 Oregon 385, it was held that a town recorder had no power under this statute to have a tie between two candidates for town marshal settled by lot, but the constitutionality of the statute was not discussed or decided.

In New Jersey the statute provides that in case of a tie for a municipal office the town committee shall "elect between those having an equal number of votes, unless they deem a special town meeting for these purposes advisable, and in that case they shall have power to call such special town meeting," etc.    In State ex rel. Brown v. Boden, 51 N. J. L. 114, it was held that after the town committee had ordered a special election, it could not reconsider its action and settle the tie by electing one of those having an equal number of votes.    The constitutionality of the statute was not passed upon.

In State ex rel. Mahoney v. McKinnon, 8 Oregon 493, it was held that in case of a tie neither candidate is elected and neither can enter into office until the tie is settled by lot as the statute provides, but although the Constitution of that State (sec. 16, art. 2) provides that in all elections the person receiving the highest number of votes shall be declared elected, the constitutionality of the statute was not called in question or decided.

In Webster v. Gilmore, 91 Ill. 324, it appeared that the parties litigant had received an equal number of votes for the office of the supervisor of the town, and that "lots were thereupon drawn, and Gilmore drew the successful lot." Webster contested the election, but no question as to the constitutionality of the statute was raised or decided.

The statute of Michigan (Comp. L. 1871, sec. 136) provides that in case of a tie, "such persons shall draw lots for election to such office," etc.    In People ex rel. Keeler v. Robertson, 27 Mich. 116, it was held that such settling of a tie did not preclude an inquiry by the Attorney-General, on the relation of the losing party in the drawing, into the legality of votes cast at the election.    The constitutionality of the statute was not passed upon, although section 3, of article X of the Constitution, which requires a register of deeds (the office in question in that case) to be *chosen* by the *electors* is quoted

and the words "chosen" and "electors" are emphasized and italicised.

In the People ex rel. Evans v. Sutherland, 41 Mich. 177, it appeared that there had been a tie, which had been settled by the parties drawing lots, but the constitutionality of the statute was not discussed or decided.

In Kentucky the statute requires the examining boards in the state, district and county elections, to cast lots in case of a tie vote. In Hammock v. Barnes, 4 Bush. 390, this statute was held not to be applicable to ties in municipal elections. The constitutionality of the statute was not decided.

In State v. Adams, 2 Stewart (Ala) 231, it appeared that the election for sheriff had resulted in a tie, and that the sheriff as the supervisor of election had cast the deciding vote. The court discussed the effect of a constitutional provision which would deprive the sheriff of his right to vote except in case of a tie, although there was in fact no such provision of the constitution pointed out in the case, but held that there was no authority under the statute for the sheriff to break the tie by casting the deciding vote, and that in case of a tie no one was elected, and that a vacancy existed which the Governor had properly filled by appointment.

In Erdman v. Barrett, 69 Pa. St. 320, it appeared that Erdman and Folwell received an equal number of votes for the office of prothonotary. Barrett, the hold-over incumbent, claimed that as the election resulted in a tie, he was entitled to hold over until the next election. Erdman instituted a proceeding against Barrett to test his right to hold the office. The court dismissed the proceeding, holding that in case of a tie either party might contest with the other the election, but that the incumbent (not being a party to the tie) was not a necessary or proper party to such a proceeding, and his right to the office could not be questioned by either party to the tie. This was all that was decided in that case.

In Patterson v. People ex rel. Allen, 65 Ill. App. l. c. 655, it was decided that:  "In case of a tie in the election of any city officer it should be determined by lot which candidate shall hold the office.   Section 58, chapter 24, Hurd's Revised Statutes, 264."   The constitutionality of the statute was not decided.

In the contested election case of Reed v. Corden (Clarke and Hall's Digest Contested Elections H. of R. 1789-1834, page 353), it appeared that the parties had received an equal number of votes as representative in Congress from the State of Maryland, and that the Governor and Council, acting under a law of the State of Maryland, "proceeded to decide between them which should be the representative," and accordingly issued a certificate of election to Corden.   The constitutionality of the State statute was challenged.   The Constitution of Maryland directed that all elections should be by ballot.   The committee of elections, of the House of Representatives, of the 17th Congress, which was composed of Messrs. Sloane of Ohio, Edwards of North Carolina, Tucker of South Carolina, Moore of Virginia, Walworth of New York, Rodgers of Pennsylvania, and Smith of Kentucky, after referring to article I, section 2 of the Constitution of the United States, which provides that the House of Representatives shall be composed of members chosen every second year by the *people* of the several States, and to section 5 of article I, which makes each house the judge of the election of its own members, said: "On the first Monday of October, 1820, in conformity with the law of Maryland, an election was held by the qualified electors of the sixth congressional district.   On that day they either did, or did not, elect a member of Congress. None could be elected unless he received a greater number of votes than were given for any other candidate.   The term election must mean the act of choosing, performed by the qualified electors, in conformity with the requirements of the Constitution and laws regulating the

manner in which the choice shall be made.    If, therefore, the legal electors on the day appointed shall fail to make a choice, it is confidently believed that no other authority of the State can, at any other time, make good this defect.    Let it be supposed that the electors should fail to attend an election; that, consequently, no election is held; would it then be contended that the executive authority could, *by lot or otherwise,* appoint a representative for such district in the Congress of the United States?    This is a power which, it is presumed, none will contend does exist.    Yet it is believed to be nothing more than that which has been exercised by the Governor and Council of Maryland, in the case under consideration.    In this case, the electors assemble, they proceed to elect, they make no choice, they come to no constitutional result.    It is asked, what is the difference between the two cases?    The one would be an appointment, because no election had been held; the other, because no choice had been made.    The committee being of opinion that the power thus virtually exercised by the Governor and Council of Maryland, in appointing a representative to the Congress of the United States, being contrary to the express provisions of the Constitution, and one which this House can not sanction, have no hesitation in rejecting the official statement of the proceedings in the case as evidence of the right of the sitting member to a seat in this House."

It will thus be observed that, outside of Missouri, in every State, where there is a statutory provision as to a tie except Maryland, the statute prescribes that the tie shall be decided by drawing lots, which is done either by the candidates themselves or by the election officers; that in Indiana alone has such a statute been expressly held to be constitutional and not to conflict with the provision of the organic law which requires all elections to be by ballot cast by the electors; and that the Maryland statute which authorized the

Governor and Council to "decide" where there is a tie, without saying how that decision is to be made, whether by lot or otherwise, is unconstitutional, whether it be made by lot or otherwise, because the *people* must elect, and no one is elected who does not receive "a greater number of votes than were given for any other candidate," and that an election which results in a tie is no better constitutional result than a failure to hold any election at all.

In the case at bar it appears that the mayor of St. Louis based his action upon the decision of this court in the case of Lewis v. State ex rel. Mayo, 12 Mo. 128, and in so doing he acted properly and in obedience to the laws of this State as declared by the highest court in the State, and his act is therefore to be commended, whatever the result in this case may be, for this court alone has power over that decision—it is binding upon every other court, officer and citizen, so long as it stands.

We come, therefore, to the question whether in the light of the Constitution, of precedent and of reason the decision in that case was a proper conclusion at the time it was rendered, and whether it ought to be adhered to under the Constitution as it now is.

The office in controversy in that case was clerk of the county court of Platte county. The election resulted in a tie. Section 8 of chapter 25, R. S. 1845, page 201, provided: "Elections for clerks shall be conducted as other elections are, but the returns of elections shall be made to the presiding justice of the county court; and if there be a tie or contested election, it shall be determined by the court to which the office belongs."

Section 3 of article II of the Constitutional Amendments of 1834, provided: "That the offices of the clerks of the several courts within this State, shall be vacated on the first day of January, one thousand eight hundred and thirty-six; and the clerks of the circuit and county courts of the respective

counties shall be *elected* by the qualified *electors* of their respective counties," etc. The Constitution made no provision for determining a tie as to such clerks and did not authorize the General Assembly to make any provision in this respect. Previous to the adoption of the constitutional provision the clerks of the county courts were appointed by the court.

In the Lewis case, *supra,* it was reasoned that as the Constitution provided that sheriffs and coroners should be elected by the qualified voters of their counties, and that as section 25, article IV of the Constitution provided that: "In all elections of sheriff and coroner, when two or more persons have an equal number of votes, and a higher number than any other person, the circuit courts of the counties respectively, *shall give the casting vote,"* etc.; therefore the statutes quoted, which gave the county courts the power, in case of a tie, to *"determine" "to which the office belongs,"* was a constitutional enactment. No attention was paid to the fact that as to sheriffs and coroners the Constitution itself expressly gave the circuit court the power to *"give the casting vote,"* while as to a tie for clerk no such power was given to anybody by the Constitution, but that instrument simply provided that the clerks must be *elected* by the qualified *electors;* but notwithstanding that the power was expressly conferred in the one case, and not conferred at all, but on the contrary excluded by implication in the other, the conclusion is drawn in that case that the statute is constitutional. No attention is further paid in that case to the fact that, as to sheriffs and coroners the Constitution expressly gives the circuit court the power to give the "casting vote," while as to county clerks the county court is authorized to *"determine" "to which the office belongs."* In the former the circuit court is given the power to break the tie by giving the casting vote, while in the latter the county court is required to "determine" "to which the office belongs." The circuit court could break the tie by cast-

ing the vote for the one it preferred, but it is not conceivable upon what legal principles the county court could proceed to determine to which of the tied candidates the office *"be-longs."* As pointed out in the case of Reed v. Cosden, *supra,* if neither was elected, that is, if neither "received a greater number of votes than were given for any other candidate," the office would not "belong" to either, and as the county court was limited, by the very terms of the statute, to the right to determine to which the office "belongs," it would be unable to draw a legal conclusion or enter a valid judgment, for it would appear that the office did not "belong" to either, because neither had been elected by the people, and the county court was not given the power to give the casting vote for the one it preferred, and hence even under the terms of the statute, there was nothing which the legal mind of the county court could operate upon, and hence the tie could not be broken, and the contestants would be left where the electors left them, neither having a right to have any court say the office *belonged* to him.

In the Lewis case, however, the court invoked the *spirit* of the Constitution to supply an omission in its letter. The spirit of the law may be invoked where a law has been passed which is ambiguous, in order to ascertain the meaning of the law-maker, but there must first be a law on the subject, before the spirit and meaning can be invoked, for if the law does not exist in letter in the books, that is, if the law-makers have never spoken on that subject, their spirit and meaning can not be inquired into, for they have neither said or attempted to say anything which needs interpretation. So as the framers of the constitutional amendment of 1834 never attempted to make any provision for deciding in a case of a tie for the office of clerk of the county court, but left it to the people to elect, there is no spirit or meaning to be invoked, nothing to which it could attach or throw light upon.

The fact that provision was made as to ties for sheriff

and coroner, and no such or other provision made for ties for county clerks, is a very conclusive demonstration that the framers of the constitutional amendment did not intend that ties for county clerks should be determined in any manner by the county court or any one else, for if they had so intended they would have said so in express terms as they did respecting sheriffs. As they did not· do so, it is plain that instead of its being an oversight, it was their intention to require the people to elect, and if there was a tie, there was no election, and the legal consequences ensued. The case of Lewis v. State ex rel. Mayo, 12 Mo. 128, was, therefore, erroneously decided, and is hereby overruled.

Passing now to section 6099, R. S. 1889, which authorizes the county court to "decide" in case of a tie for justice of the peace. Section 37 of article VI of the Constitution of 1875, authorizes the election or appointment of justices of the peace, and the act of 1891 (Acts 1891, p. 175) requires the justices of the peace in cities of 300,000 to be *elected,* at the general elections, and section 6090 requires justices of the peace elsewhere, in the State to be elected. The Constitution does not provide how ties for justice of the peace shall be settled, and does not authorize the General Assembly to make any such provision—it leaves it with the people to elect, or some officer to appoint as may be regulated by law. Section 30 of article VI (Const. 1875) provides that ties for judges of courts of record "shall be determined as prescribed by law," and· section 40 of article VI (Const. 1875) has a similar provision in case of a tie between candidates for clerk of any court of record. Section 2 of article IV (Const. 1875) requires senators and representatives to be *"chosen* by the qualified voters," but does not prescribe or authorize any one to prescribe how a tie shall be settled. Section 3 of article V (Const. 1875) provides that in case of a tie for the officers of Governor, Lieutenant-Governor, Secretary of State, State Auditor, Treasurer, Attorney-General and Superin-

tendent of Public Schools, *"the General Assembly shall, by joint vote, choose one of such persons for said office."* Section 10 of article IX (Const. 1875) requires sheriffs and coroners to be *elected* by the qualified voters, and the provision (sec. 25, art. IV) of the Constitution of 1820, which authorized the circuit court to give the casting vote for sheriff or coroner, in case of a tie, has been left out of the Constitution of 1875, and these officers are left where county clerks were left by the Constitution of 1820, to be *elected* by the people.

Under the Constitution of 1875 the General Assembly was expressly given power to prescribe by law how a tie between candidates for judge or clerk of a court of record should be determined, but as to all other ties, the Constitution expressly declares how they shall be decided and does not authorize the General Assembly to otherwise provide, or else it makes no provision for them and does not authorize the General Assembly to do so, but requires such officers to be *elected* by the people. This must have been intentional and not an oversight, for in section 30 of article VI, the minds of the framers of the Constitution were directed to ties for judges of courts of record, and in section 40 of the same article they were directed to ties for clerks of courts of record. Section 37 of article VI, relating to justices of the peace, comes in between these two sections of article VI, and therefore the question of ties can not fairly be said to have been in mind when section 30 was adopted, out of mind when section 37 was adopted, and in mind when section 40 was adopted. It was plainly intentional. Being left in this shape by the organic law, neither the General Assembly nor the courts have a right to supply an omission, if it could be so considered, in that organic law, either by express legislation or by judicial interpretation, but their duty is to enforce the law and require all such persons to show that they had been *elected* by the people, and failing so to show, to execute the law applicable to cases where there is an intrusion into a public office.

It follows that so much of section 6099 as attempts to authorize county courts to decide in cases where, "two or more persons shall have an equal number of votes for justice of the peace for any township," is unconstitutional, and that as county courts have no such power, the mayor of St. Louis has no such power, if he has the powers of county courts in this respect, which it is not necessary now to decide, and hence that the respondent herein has shown no legal title to the office of justice of the peace for the fourth justice's district of the city of St. Louis, but is in law an intruder therein. The writ of ouster is hereby issued against respondent ousting him from the office of justice of the peace for the fourth justice's district of the city of St. Louis, and he is also adjudged to pay the costs of this proceeding.

All concur. VALLIANT, J., in the result only.