DAYTON, ETC., CO. v. BARTON.

(*Knoxville.* November 20, 1899.)

1. ACTIONS. *Maintainable by bona fide holder of punchouts, when.*

One who has purchased fairly, honestly, and at a reasonable price, coupons, scrip, punchouts, store orders, or other evidences of indebtedness payable, by their terms, otherwise than in money, issued by an employer to his employe for the latter's wages, is, within the meaning of Acts 1899, Ch. 11, a *bona fide* holder thereof, and entitled, under that Act, to recover, on the same conditions as the employe himself, the face value of such paper in money, although it purports, on its face, to be "not transferable." (*Post, pp. 606–610.*)

Act construed: Acts 1899, Ch. 11.

2. CONSTITUTIONAL LAW. *Employer's Act constitutional*

Acts 1899, Ch. 11, which compels employers to pay, in money at face value, when presented as therein required, coupons, scrip, punchouts, store orders, or other evidences of indebtedness, payable, by their terms, otherwise than in money, issued to their employees for wages, is not unconstitutional as an unjust and arbitrary curtailment of the freedom of contract, in violation of "the law of the land" and "due process of law" clauses of the State and Federal Constitutions. (*Post, pp. 610–615.*)

Constitution construed: Art. I., Sec. 8; U. S. Con., XIV. Amendment, Sec. 1.

Act construed: Acts 1899, Ch. 11.

Cases cited and approved: Stratton v. Morris, 89 Tenn., 521; Henley v. State, 98 Tenn., 698; Sutton v. State, 96 Tenn., 710; Harris v. Railroad, 99 Tenn., 705.

3. SAME. *Corporations included in "law of the land" and "due process" clauses of Constitutions.*

The word "man" in the "law of the land" clause of the State Constitution, and the word "person" in the "due process"

Dayton, etc., Co. v. Barton.

clause of the Federal Constitution, include corporations. (*Post, p. 611.*)

Constitution construed: Art. I., Sec. 8; U. S. Con., XIV. Amendment, Sec. 1.

Cases cited and approved: Railroad v. Harris, 99 Tenn., 705; Harbison v. Knoxville Iron Co., *ante*, p. 421; Dugger v. Ins. Co., 95 Tenn., 250; 164 U. S., 578; 165 U. S., 154.

4. SAME. *Both "liberty" and "property" include right of contract.*

The words "liberty" and "property" as used in said clauses of the State and Federal Constitutions include and protect the right of lawful contract as to labor and its compensation. (*Post, p. 611.*)

Constitution construed: Art. I, Sec. 8; U. S. Con., XIV. Amendment, Sec. 1.

Cases cited: Harbison v. Knoxville Iron Co., *ante*, p. 421; Bank v. Divine Grocery Co., 97 Tenn., 611; Dugger v. Ins. Co., 95 Tenn., 252; 165 U. S., 589; 169 U. S., 391; 127 U. S., 684; 16 Wall., 127; 58 Am. Rep., 640.

5. SAME. *Right of contract subject to curtailment by statute.*

The right of contract is not absolute and unlimited, but subject to control by any legislation that does not conflict with said clauses of the State and Federal Constitutions. (*Post, pp. 611, 612.*)

Case cited: Harbison v. Knoxville Iron Co., *ante*, p. 421.

6. SAME. *"Law of the land" and "due process of law" are the same.*

The terms "law of the land" and "due process of law" mean the same thing. (*Post, p. 421.*)

Cases cited: Railroad v. Harris, 99 Tenn., 704; 96 U. S., 421.

7. SAME. *Legislative power.*

All legislative authority of the State is vested in the General Assembly; and every enactment of that body, whenever passed, has the force of a valid law, unless it be in conflict with some delegated power of the Federal government, or with some restriction of the State Constitution. The Courts cannot annul statutes upon the supposed ground of their conflict with principles of natural equity or with the inherent rights of freemen or the like. (*Post, pp. 613, 614.*)

Constitution construed: Art. 11., Sec. 3.

Dayton, etc., Co. *v.* Barton.

Cases cited and approved: Reelfoot Lake Dist. *v.* Dawson, 97 Tenn , 159; Stratton *v.* Morris, 89 Tenn., 512; Henley *v.* State, 98 Tenn., 682.

FROM RHEA.

Appeal in error from Circuit Court of Rhea County. M. D. SMALLMAN, J.

BURKETT, MILLER & MANSFIELD for Company.

W. L. GIVENS and B. G. McKENZIE for Barton.

CALDWELL, J. This an appeal in the nature of a writ of error from a judgment rendered in the Circuit Court of Rhea County in favor of T. A. Barton and against the Dayton Coal and Iron Company (Limited) for $50 and costs of suit.

The defendant company is a private corporation, organized under the laws of Great Britain, and engaged in manufacturing iron, mining coal, and making coke, at and near Dayton, Tenn. It also conducts a general merchandise store, from which it sells goods to its employees, and to others desiring to buy.

In the operation of its furnaces, mines, and coke ovens it employs from five hundred to six hundred laborers, whose monthly wages aggregate from $12,000 to $20,000. These wages are paid partly in orders on the company's store for mer-

chandise, called "punchouts," and partly in money. Punchouts are issued any day, and for all wages then earned, to all laborers desiring them; but money is paid monthly only, on what is called the regular pay day. This day comes about the 20th of each month, and at that time all wages earned up to the first day of that month, and not previously paid in· punchouts, are paid in money. No cash is ever paid on the regular pay day of any month for wages earned during that month; but, so far as payments in money are concerned, the company's method keeps it always in arrears about twenty days.

As a result of that plan, the company has heretofore paid only about one-half of the aggregate wages of its employees in cash, the other one-half being paid in punchouts, which are shown to be worth considerably less than money on the general market, though always redeemable at their face value in merchandise at the company's store. The punchouts are in denominations of from $1 to $5, and are in the following form:

FACE.

| 25 | 25 | 25 | 25 | 10 | 10 | 10 | 10 |
|----|----|----|----|----|----|----|----|
| GOOD FOR ALL AMOUNTS UNPUNCHED. | | | | | | | 10 |
| APRIL, 1899. $2 No. L. C. 15. Not Transferable. | | The storekeeper will supply goods to the amount of this order to GEO. HOLSTON, in account with Dayton Coal and Iron Co. (Limited). G. C. McKENZIE, Cashier. | | | | | 10 |
| 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 |

Dayton, etc., Co. *v.* Barton.

BACK.

| 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 |
|---|---|---|---|---|---|---|---|
| This order is Not Transferable, and can be used ONLY by the party in whose favor it is made. | | | | | | | 10 |
| | | | | | | | 10 |
| 25 | 25 | 25 | 25 | 10 | 10 | 10 | 10 |

The plaintiff, Barton, who is a merchant at Dayton, sold to certain of the company's employees goods to the amount of $50, and in payment therefor received from them twenty-seven of these punchouts, aggregating that sum, at their face value. These he presented to the company on a regular pay day and demanded their redemption in cash. His demand was refused, and thereupon he brought this suit to compel their payment, and obtained the judgment from which the company prosecutes this appeal in error. He bases his action on Secs. 1 and 2 of Chap. 11 of the Acts of 1899. Those sections are in the following words:

"SECTION 1. *Be it enacted by the General Assembly of the State of Tennessee,* That all persons, firms, corporations, and companies using coupons, scrip, punchouts, store orders, or other evidences of indebtedness to pay their or its laborers and employees, for labor or otherwise, shall, if demanded, redeem the same in the hands of such laborer, employee, or *bona fide* holder, in good and

Dayton, etc., Co. *v.* Barton.

lawful money of the United States; *Provided,* The same is presented and redemption demanded of such person, firm, company, or corporation using same as aforesaid, at a regular pay day of such person, firm, company, or corporation to laborers or employees, or if presented and redemption demanded as aforesaid by such laborers, employees, or *bona fide* holders at any time not less than thirty days from the issuance or delivery of such coupon, scrip, punchout, store order, or other evidences of indebtedness to such employees, laborers, or *bona fide* holder. Such redemption to be at the face value of said scrip, punchout, coupon, store order, or other evidences of indebtedness; *Provided further,* Said face value shall be, in cash, the same as its purchasing power in goods, wares, and merchandise at the commissary, company store, or other repository of such company, firm, person, or corporation aforesaid.

"SEC. 2. *Be it further enacted,* That any employee, laborer, or *bona fide* holder referred to in Section 1 of this Act, upon presentation and demand for redemption of such scrip, coupon, punchout, store order, or other evidence of indebtedness aforesaid, and upon refusal of such person, firm, corporation, or company to redeem the same in good and lawful money of the United States, may maintain in his, her, or their own name an action before any Court of competent jurisdiction against such person, firm, corporation, or company, using

19 P—39

same as aforesaid, for the recovery of the value of such coupon, scrip, punchout, store order, or other evidence of indebtedness, as defined in Section 1 of this Act."

From the facts already recited, it is clear that the plaintiff purchased the instruments sued on fairly, honestly, and at a reasonable price, and, hence, that he is a *bona fide* holder within the meaning of the statute, and that he is, therefore, entitled to recover their face value in money, if the statute is a valid law. It matters not that the punchouts recite on their face, and also on their back, that they are "not transferable;" since the statute declares in positive terms that they shall be redeemable in the hands of any *bona fide* holder, whether he be the original payee or another person. Besides, the admitted custom of the company to redeem its punchouts in merchandise to any one presenting them, and the proven knowledge of that fact on the part of the plaintiff, give him the same standing as if they were payable to bearer in express words.

But the company denies the validity of the statute. It says that the Act unjustly and arbitrarily curtails the freedom of contract between employer and employee, and thereby violates that part of Section 8 of Article I. of the Constitution of Tennessee, which provides "that no man shall be . . . deprived of his life, liberty, or property but by . . . the law of the land," and of that

part of Section 1 of the Fourteenth Amendment
to the Constitution of the United States, which
provides that "no State shall . . . deprive any
person of life, liberty, or property without due
process of law."

The words, "man" and "person," as used in
those provisions, respectively, include corporations
(*Railroad* v. *Harris,* 99 Tenn., 705; *Harbison* v.
*Knoxville Iron Co., ante,* p. 421; *Dugger* v.
*Ins. Co.,* 95 Tenn., 250; *Turnpike Co.* v. *San-
ford,* 164 U. S., 578; *Railway* v. *Ellis,* 165 U.
S., 154); and the words, "liberty" and "prop-
erty," as used in both, include the right of law-
ful contract as to labor and its compensation (*In
re Jacobs,* 98 N. Y., S. C., 58 Am. R., 640;
*Allgeyer* v. *Louisiana,* 165 U. S., 589; *Holden* v.
*Hardy,* 169 U. S., 391; *Powell* v. *Penn,* 127 U.
S., 684; *Slaughterhouse Cases,* 16 Wall., 127; *Dug-
ger* v. *Ins. Co.,* 95 Tenn., 252; *Bank* v. *Divine,
Grocery Co..* 97 Tenn., 611, 612; *Harbison* v.
*Knoxvile Iron Co., ante,* p. 421), consequently,
the defendant is entitled to the same protection
against the forbidden deprivation as if it were a
natural person.

The deprivation in the present instance, such
as it may be, is sought alone through and by
virtue of the legislation heretofore set out in this
opinion, and if that legislation is entitled to recog-
nition as a valid statute, then this action is
maintainable, otherwise it is not.

The Act does curtail the company's right of contract, so far as to make its punchouts payable in money instead of goods, at the election of any *bona fide* holder, and when presented on a regular pay day, or as much as thirty days after issuance.

This, however, is not sufficient of itself to vitiate the Act. The right of contract was never unlimited, but always subject to the law's control. It cannot be affected except by "the law of the land," or by "due process of law" (which means the same thing). *Davidson* v. *New Orleans,* 96 U. S., 101; *Railroad* v. *Harris,* 99 Tenn., 704; Cooley's Const. Lim., 5th Ed., 431; Black's Const. Law, 499), but it may be controlled by such law, or process, as is necessarily implied from the provision that it shall not be done otherwise. *Harbison* v. *Knoxville Iron Co., ante,* p. 421.

It follows, then, that the curtailment contemplated, though in some measure a deprivation of an element of "liberty" and "property," is valid, if the Act in question can properly be called "the law of the land," or "due process of law."

In ascertaining whether or not it is entitled to be so called, it is of no consequence that the right of contract between employer and employee as to the method of paying wages, was free from such restriction as the Act imposes, when the Fourteenth Amendment to the Federal Constitution was adopted, or when our State Constitution was adopted;

for the phrases, "due process of law," and "law of the land," appearing in those instruments, respectively, were not there employed with reference to then existing laws only, but with reference to any and every valid law that might be in existence in the respective governments at the particular time, in the near or remote future, when an effort might be made to impair or take away the right of life, liberty, or property. The science of law, like the science of government, is progressive, and those phrases were intended to embrace all valid legislation that might, from time to time, be enacted to meet the changed conditions of society, resulting from the growth of business and the advance of civilization. *Hurtado* v. *California*, 110 U. S., 531; *Holden* v. *Hardy*, 169 U. S., 386; *Harbison* v. *Knoxville Iron Co.*, *ante*, p. 421.

"All "legislative authority" of the State is vested in the "General Assembly" (Const., Art. 2. Sec. 3); and every enactment of that body, whenever passed, has the force of a valid law, unless it be in conflict with some delegated power of the Federal Government, or with some restriction of the State Constitution. *Reelfoot Lake Levee District* v. *Dawson*, 97 Tenn., 159. So long as within those bounds legislation is not subject to annulment by the Courts upon the supposed ground of opposition to natural equity or to the inherent rights of freemen, or the like. *Stratton Claimants*

v. *Morris Claimants,* 89 Tenn., 512; *Henley* v. *State,* 98 Tenn., 682.

Concededly and obviously, the present Act is not in conflict with any other provision of the Federal or State Constitutions than those against deprivation of life, liberty, or property, and it is not in conflict with them if it is in reality "the law of the land," or "due process of law" as to the subject embraced in it.

Being general in its terms and scope, embracing equally every employer and employee in like situation and circumstances in the State, and enforceable by ordinary suit, it is free from valid objection on the latter ground, and is in all respects entitled to full recognition and application as "the law of the land," and "due process of law." *Stratton Claimants* v. *Morris Claimants,* 89 Tenn., 521; *Henley* v. *State,* 98 Tenn., 698; *Sutton* v. *State,* 96 Tenn., 710; *Harris* v. *Railroad,* 99 Tenn., 705; *Dent* v. *West Virginia,* 129 U. S., 124; *Caldwell* v. *Texas,* 137 U. S., 697; 2 Tucker's Const. U. S., Sec. 390.

The question is more elaborately considered in the late case of *Harbison* v. *Knoxville Iron Co., ante,* p. 421, wherein the same Act was adjudged valid without reference to the police power of the State, and also as a wholesome police regulation. As there said, the object of the Legislature was to place the employer and employee more nearly on an equality with respect to wages,

Dayton, etc., Co. *v.* Barton.

as well as, by that means, to promote public peace and good order, and lessen the growing tendency to strife, violence, and bloodshed in important departments of useful trade and business. The opinion delivered in that case is referred to for a full consideration of the objection here made to the Act, and for the Court's reasons for holding it to be a valid law.

Let the judgment be affirmed.