COLLIER   v.   MONTGOMERY   COUNTY.

. (*Nashville.*   January   10,   1900.).

1. SHERIFF.   *Compensation of.*

A Sheriff who has contracted with a county to keep all pris-
oners confined in its jail and workhouse. whether for trial or
under workhouse sentence, for a gross sum payable monthly,
relinquishing to the county all fees allowed by law for such
service, cannot repudiate the contract after it has been ob-
served by the parties for nearly six years, the county, during
that period, having paid the stipulated compensation and
received the legal fees, and recover from the county the amount
that the fees may have exceeded the compensation paid, upon
the ground that both parties. in making the contract, acted
upon the belief and misapprehension that the sections of the
workhouse law authorizing the contract were constitutional,
when, in fact, they were unconstitutional, and have since been
so declared.   Under such contract the Sheriff secured the care
of the workhouse convicts, to which he was not entitled by
law without contract. and a sum certain for an uncertainty,
and is estopped. having appropriated these benefits, to set up
said defense.   (*Post, pp. 706–718.*)

Cases cited: Speck v. State, 7 Bax., 51; State v. Cummins, 99
Tenn., 667.

2. SAME.   *Same.*

Where a Sheriff has been allowed less than he is entitled to
under the law, for attending on the courts, he may recover
the balance by action against the county, notwithstanding the
fact that he collected and received the amount allowed.   (*Post,
pp. 717, 718.*)

FROM   MONTGOMERY.

Appeal   from   Chancery   Court   of   Montgomery
County.   J.   S.   GRIBBLE,   Ch.

---

Collier *v.* Montgomery County.

---

JNO. F. HOUSE, F. F. MARTIN, A. R. GHOLSON for Collier.

FORT & SCALES, LEECH & SAVAGE for County.

WILKES, J. This is a bill to ·recover from Montgomery County fees alleged to be due complainant as Sheriff of the county from September, 1892, to September, 1897, and which he alleges he was deprived of by the enforcement by the county of the workhouse system, under the Acts of 1891, and Chap. 155, Acts of 1889, relating specially to a workhouse for Montgomery County. It appears that the jail of Montgomery County was designated as its workhouse under the Acts of 1891 and 1889, referred to, and that a contract or agreement was made by the Sheriff to board and keep all prisoners in the jail and workhouse for a compensation of $65 per month.

The regular fees allowed by law for keeping prisoners, both in the jail and workhouse, were collected by the county and paid into its treasury, and the allegation is that the aggregate amount received by the county from such sources was greatly in excess of the compensation paid complainant under the contract during the six years that complainant filled the office of Sheriff and Jailer.

The suit was not brought until after this agreement between complainant and the county had been largely executed, and the Sheriff had filled

two terms and wellnigh filled the third term of office.
The allegation is that both complainant and the
county were under the belief that the workhouse
law of 1891 was constitutional in all its provis-
ions, and acting under this belief the contract
was made, the effect and result of which was to
deprive complainant of fees to which he was en-
titled by law.

The bill states that this Court, in November,
1897, declared certain portions of that law uncon-
stitutional and void—that is, in so far as it
sought to deprive the Sheriff of his rightful ju-
risdiction, powers, and functions, and hence the
agreement made by him to act as Superintendent
of the workhouse, and to keep prisoners committed
to it, as well as to the jail, at a stated salary,
was not binding, but was contrary to public pol-
icy, and he had a right to disregard the same,
and recover the fees allowed by law.

He asks for an account to show the amounts
collected for jail fees by the county, and which,
but for this agreement, would, under the law,
have been paid to him, and for a judgment for
this sum credited by the amounts which he had
received under the agreement.

In other words, he seeks to recover what, by
law, he would have been entitled to less the
amounts actually collected by him under the agree-
ment. Since the passage of the workhouse law of
1891, and the special Acts relating to the work-

house of Montgomery County, the statutes have made a distinction between prisoners who are confined awaiting trial, or otherwise held not under sentence, and those who have been convicted and committed to work out as punishment fines and sentences of the Courts.

The latter class pass under the operation of the workhouse law, the former do not. As to the former, this Court has held in the case of the *State* v. *Cummins*, 15 Pick., 667, that their custody and keep cannot be taken away from the Sheriff, even, although, under the law, he may become also the Superintendent of the workhouse, and the jail may be designated and declared to be such workhouse. In other words, it is optional with the county authorities whether they will use the county jail as a workhouse, when it is so constructed as to answer that purpose, as well as that of a place of detention for prisoners not convicted, and it is a matter of agreement and contract whether the Sheriff shall act also as Superintendent of the workhouse, or some one else shall be selected for that purpose, the preference being given to the Sheriff. Another person than the Sheriff may be selected and employed, however, as Superintendent, and another place may be selected as a workhouse other than the jail, if the county authorities so select. We think it plain that the Sheriff cannot, against his will, be deprived of the custody of the jail, so far as it

Collier *v.* Montgomery County.

is necessary for the detention of prisoners who have been committed for safe-keeping, or who are under sentence of death, or who are awaiting trial or a transfer to State or other prisons, or who are detained merely as witnesses; in short, all such prisoners as have not been convicted and sentenced to the workhouse under the provisions of the Acts providing that system. We think it equally clear that the county may declare the jail a workhouse, and use it as such so far as required for the confinement and punishment of persons convicted and sentenced to it, and as to these the county may contract for their keep and custody with the Sheriff if it can agree with him upon terms, and if not, then with any other suitable person. This is, however, not to interfere with the Sheriff's control of the jail for the purposes indicated. But this does not fully meet the facts in the present case. Here the county and Sheriff, under a mutual mistake of law, or rather a mutual misapprehension that a law was valid, made a contract for the custody and keep of all prisoners of all classes for a certain compensation per month, the county collecting the fees allowed by law and paying the compensation per month, as agreed upon, to the Sheriff.

When the contract was made, both the county authorities and Sheriff were under the belief that the county could take control of all the prisoners, both those committed to the workhouse after sen-

tence and those committed to jail for detention, and farm them out by contract for their custody and keep, itself collecting the fees allowed by law. The following features are therefore important in the consideration of the questions involved, to wit: The Sheriff acted under the belief that the law was constitutional, and that under it he could be required to give up the custody of the jail and prisoners unless he could make terms with the county for their retention, and the county acted upon the same belief; there was no compulsion upon the Sheriff to give up the jail entirely, nor the prisoners properly belonging to his custody, otherwise than arose out of the construction of the law.

The contract was, in this sense, willingly made, and has been executed, and the compensation has been paid as agreed upon, and the Sheriff has acquiesced therein for a number of years and series of terms without in any way questioning the validity of the Act or the right of the county to make the contract.

The bill does not allege that the Sheriff was coerced or misled by the county into surrendering his rights as Sheriff, and the cause being heard on demurrer, the case presented is simply that he and the county authorities assumed that the provisions of the workhouse law were all valid, and acted under its provisions and contracted with regard to it until the Act was, in the features

mentioned, declared invalid, and the question is, whether, after the contract has been executed, the compensation paid and received by the Sheriff, he can challenge the validity of the Act and disaffirm the contract as made. The Court of Chancery Appeals was of opinion that he could not, and that such disaffirmance was forbidden by prinples of sound public policy.

In the case of Speck v. The State, 7 Bax., 51, this Court said: "When nothing appears on the face of an Act showing its invalidity, it is regarded prima facie as valid. Respect for the Legislature, therefore, concurs with well-established principles of law in the conclusion that such an Act is not void, but voidable only, and it follows as a necessary legal inference from this position that the ground of avoidance for unconstitutionality can be taken advantage of by those only who have a legal right to question the validity of the Act, and not by strangers," citing Cooley's Constitutional Limitations, 164. Mr. Cooley says: "There are cases when a law, in its application to particular facts, must be sustained, because the party who makes objection, has, by prior acts precluded himself from being heard against it; and when a constitutional provision is designed for the protection solely of the property rights of the citizen, it is competent for him to waive the protection and to consent to such action as would

be invalid if taken against his will." Cooley's Constitutional Lim., 216.

It may be said that there is a distinction between cases where a citizen assents to the invasion of his private property rights under an invalid Act and where a public officer submits to such Act which deprives him of some of his functions and emoluments, but if there is any valid difference it can only be based on considerations of public policy, which would prohibit an official from submitting to an invalid Act, and would require him to test all Acts which affect his official duties or prerogatives before submitting to or acting under the same. On the other hand, there are sound reasons of public policy why this officer, who has acted under a statute as a valid one, and contracted with reference to it, and received the compensation he was entitled to under his contract, should not, after it is executed, be allowed to uproot the agreement and acts under it, to the inconvenience and detriment of the county authorities with whom he has contracted. The contract is based upon a valid consideration, to wit, the keep of the workhouse prisoners, to which the complainant would not have been entitled except upon an agreement entered into with the county authorities.

It is insisted that in this case the complainant is not asking to do an inequitable thing, but is proffering to return all he has received under

the contract before requiring the county to pay him the amount he would have been entitled to under the law. This, however, is more the appearance of doing equity than the actual doing of it. Complainant is now fully aware of the fact that the fees allowed by law will exceed the compensation paid him under the contract, a fact which could not have been known when he entered into the agreement, and his proposition is simply to account, and credit the amounts due him by the amounts he has received under the contract, and be allowed to receive the balance after the result of such accounting becomes apparent. It is hardly to be assumed that if the balance of accounts was in favor of the county, complainant would be seeking to have such account in order that he might refund, so that he occupies the attitude of executing the contract and receiving compensation thereunder, and after it has been executed, and he can see that his compensation under the law would have been greater than under the contract, he seeks to recover under the law, accounting for what he has received under the contract. But it is evident that for the keep of the workhouse prisoners the county may have been able to make a contract for much lower rates than was made with complainant, and the price at which complainant was willing to keep the prisoners as a whole, and which the county would have been willing to pay for such

service, is no criterion of the contract it might have made for its workhouse prisoners alone.

In Black on Constitutional Law, Sec. 5, it is said: "In a country governed by a written Constitution, which is of supreme power over the law-making power, and to which all ordinary legislation must bend, an unconstitutional law is void and of no effect, and, in fact, is not law at all, yet, so long as it stands on the statute book unrepealed, it will have the presumptive force of law, unless the proper Courts have pronounced its invalidity." And, again: "Persons may be estopped from denying the constitutionality of a statute by participating in procuring its passage, by acquiescing in it after its passage, or by accepting benefits under it, although it may be invalid as to all other persons. And an individual has no right to complain that a statute is unconstitutional after he has endeavored to take benefits under it to the injury of others." Black on Constitutional Law, Sec. 35, citing *Ferguson* v. *Landum,* 5 Bush (Ky.), 230; *Hansford* v. *Barbour,* 3 A. K. Marsh. (Ky.), 515.

In the case of *People* v. *Bunker,* 70 Cal., 212, it is said an officer who has acted and received money under an Act cannot contest its constitutionality.

Again: "One who has accepted an office having at least a potential existence, and has received the emoluments of it, is estopped to show to his

own advantage that the office had never been le-
gally created because it was not done in a proper
mode, as by ordinance." 30 L. R. A., 409. See
in accord in principle with this ruling, and more
or less applicable, *Ill. Central R. R.* v. *King,* 13
Southern Rep., 824; *State* v. *Board Police Com.,*
28 At. Rep., 311; *Ayers* v. *Newark,* 6 At. Rep.,
659; *Spokane Co.* v. *Allen et al.,* 37 Pac. Rep.,
428; *Dow* v. *Electric Co.,* 31 N. E. Rep., 22
(N. H.); *L. & N. R. R. Co.* v. *Alexander,* 37
S. W. Rep., 981; *Ran* v. *City of Little Rock,*
34 Ark., 303; *Sessums* v. *Botts,* 34 Tex., 335.

In an unreported case of *C. W. Staten* v.
*Montgomery Co.* (oral), the validity of the Act of
1883, Chapter 111, was questioned upon constitutional
objections, and the Act was held invalid because
of a defective title. This Act took out of the
control of the Sheriff the jail of Montgomery
County. This Court held the Act unconstitutional,
but decreed, further, that as the Sheriff had sub-
mitted to the same, he could not recover fees as
Sheriff except from the time he made demand for
the jail. In reply to this it is said that in that
case, the Sheriff being out of possession, it was
held that his right to recover would be limited to
the time he made such demand, but in the pres-
ent case, the Sheriff being in possession all the
time, no demand was necessary, and he should be
allowed fees back to the date when the contract
was made.

Collier *v.* Montgomery County.

But this reply, we think, while quite ingenious, is unsound, since the complainant was not only out of possession as Sheriff, but in possession under the contract, and was not asserting at any time a right to conduct the jail under the law and as Sheriff.

We are not unmindful of the trend of modern decisions to the effect that mistake of law will, in many cases, be relieved against, especially when the mistake is mutual, nor can we ignore the very able presentation of complainant's case by his counsel, and the number of authorities cited by them. We have not time to comment on each of these cases. It is sufficient to say that they support the doctrine laid down by the Supreme Court of the United States in *Norton* v. *Shelby County,* 118 U. S., book 30, pages 425–454, as to the want of force and effect of an unconstitutional law. But we think the present case stands upon a different footing from the many cases cited; in the features that complainant did not simply acquiesce in and submit to this Act, but went a step further, and contracted in view of it and executed the contract and received compensation thereunder, until now it would be inequitable to require an accounting, and impracticable to obtain the data from which the account could be stated. This difficulty is not avoided by the proposition of the complainant to credit the amounts due him under the law by the compensation he received

under the contract, because it is evident that the county, if it had been providing alone for its workhouse hands, would, in all probability, have made different terms for their keep. If the complainant had been forced to relinquish the jail, and his fees as to that alone were involved, this Court would feel constrained to order the account, no matter how difficult the accounting must be, but here there was a contract which consolidated the jail and workhouse force, and fixed an aggregate compensation for both together, and this is a circumstance which must be given due weight in an effort now to overhaul the transactions of a series of years and recast the account when it is practically impossible to obtain the necessary data. And this distinction is still further illustrated by our holding, which we do, that the Sheriff is entitled to the additional compensation of fifty cents per day for attendance upon the Courts which is sued for in this case. This is in accord with the holding of this Court in the case of *Jones* v. *Burdett and the Justices* (oral), decided at December term, 1896, at Knoxville, construing the several Acts relating thereto, and was based upon the theory that the Sheriff had simply not received his entire compensation, as allowed by law, but only a part of it, for specific services rendered under a valid constitutional law, but there was no contract to remit the balance,

and only a silent and temporary submission to the statute as then construed.

We do not, by this ruling, intend to hold that a Sheriff, or other officer, may farm out or bargain away his lawful fees to a third person, or even remit them himself, when it is a simple case of such attempted action, but the present case, we think, is different in its principles and policies to the one presented under such a state of facts. We are of opinion, therefore, that the decree of the Court of Chancery Appeals is correct, and it is affirmed. The holding by that Court was that complainant was entitled to the additional compensation of fifty cents per day for attendance upon the Courts, but was not entitled to set aside the contract for the keep and custody of prisoners as prayed for.