BOWLING *v.* CARNAHAN.

(*Nashville,* December Term, 1936.)

Opinion filed January 16, 1937.

ALFRED B. HUDDLESTON, of Murfreesboro, for plaintiff in error.

C. C. JACKSON, of Murfreesboro, for defendant in error.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This suit was brought by J. W. Bowling, a citizen and taxpayer of Rutherford county, to restrain defendant A. L. Carnahan from being inducted into the office of justice of the peace of the Thirteenth civil district of Rutherford county and to have the action of the election commissioners, who had issued a certificate of election to said Carnahan to said office, declared illegal and void. The suit was brought in the county court of Rutherford county, answer was filed, and on the hearing the county judge dismissed the petition. From this judgment, Bowling appealed to this court.

The facts are not in dispute. At the August, 1936; election there were five candidates for justice of the peace in the Thirteenth civil district of Rutherford county. This district included the city of Murfreesboro and was entitled to three magistrates. One Vaughan re-

ceived 1,009 votes, Brown received 674 votes, Carnahan and Smotherman each received 642 votes, and petitioner Bowling received 637 votes. Vaughan and Brown accordingly were elected without question. For the third place Carnahan and Smotherman tied. Petitioner received the lowest number of votes.

The election commissioners undertook to break the tie between Carnahan and Smotherman and issued a certificate of election to Carnahan.

The action of the commissioners of election was taken under authority of section 2097 of the Code, as follows:

"If there is a tie vote between two or more persons having the highest number of votes for the same office, in all cases where the office is filled by the votes of a single county or a single civil district, the commissioners of elections shall give the casting vote between such persons."

The contentions of the petitioner are two: First, that section 2097 is not applicable to elections for justices of the peace. Second, that, if said section applies to elections of justices of the peace, it is unconstitutional.

The first contention is based on the proposition that a justice of the peace is a judicial officer and that, when there is a tie vote in an election for such office, section 2106 of the Code applies, as follows:

"If there is a tie vote between two or more having the highest number of votes for any congressional district, the governor will give the casting vote; for any judicial officer or district attorney, the election shall be declared null, and a new election forthwith ordered."

The history of section 2097 of the Code, first above quoted, in our opinion very plainly shows that it was intended to apply to elections for justices of the peace.

Chapter 2 of the Acts of 1835-36 provides, among other things, for the election of county officers. Section 6 of this act is as follows:

"That in all cases where it shall so happen in the election of Sheriff, Trustee, Register, Circuit Court Clerk, County Court Clerk, Surveyor, or Entry Taker, that two or more persons voted for in any of said elections, have received the highest number of votes, and are equal in number, the officer holding the election shall give the casting vote."

Chapter 1 of the Acts of 1835-36 provides, among other things, for the election of justices of the peace and constables. By section 11 of that act it is provided that:

"In all cases where there is no election by reason of two or more candidates having the same number of votes, in such case the sheriff shall immediately proceed by advertisement and hold again an election in said district for justice or justices of the peace, or constable or constables, as the case may be, until said office or offices shall be filled."

The quoted section of chapter 2 of the Acts of 1835-36 was carried into section 872 of the Code of 1858 in these words:

"If there is a tie vote between two or more persons having the highest number of votes for the same office, in all cases where the office is filled by the votes of a single county, the returning officer shall give the casting vote between such persons."

The quoted section of chapter 1 of the Acts of 1835-36 was carried into section 873 of the Code of 1858 in these words:

"If the office is filled by the votes of a single district, the election is void in the case mentioned in the preced-

ing section, and the sheriff shall proceed to advertise and hold a new election.''

Obviously, therefore, under the Code of 1858, if there was a tie vote in an election for justice of the peace, the election was void and a new election was necessary. That is to say, under the Code of 1858, the returning officer of election gave the casting vote when there was a tie between candidates for county offices filled by votes from the body of the county. A new election was required when there was a tie vote between candidates for office filled by votes from a single district of the county, namely, when there was a tie vote in an election for constable or for justice of the peace.

The Code of 1932, however, provided the same method for breaking tie votes whether the tie was between candidates for an office, the occupant of which was to be selected by the voters of the county at large or by the voters of a single civil district of the county. In other words, sections 872 and 873 of the Code of 1858 were combined into section 2097 of the Code of 1932 and a single provision made for elections resulting in a tie.

We think that section 2106 was not intended to apply to elections for justice of the peace. As pointed out by Judge WISEMAN in the court below, so much of that section of the Code as relates to tie votes between candidates for judicial office is based on chapter 32, section 5, of the Acts of 1853-54. This act was passed just after the constitutional amendment which took away from the Legislature the power to elect the judges of the state and entrusted that power to the people. It was not intended to apply to elections for justice of the peace. Justices of the peace had been selected by the people, since the Constitution of 1834, and full provi-

sion made with reference to their election—including provisions for settling tie votes between candidates for that office. While justices of the peace are judicial officers, they are not judicial officers within the contemplation of section 2106 of the Code. That section of the Code was not designed to work a change of the earlier statute providing for breaking tie votes in elections for justices of the peace.

The assault on section 2097, if held applicable to elections for justices of the peace, is based on section 15 of article 6 of the Constitution that "there shall be two Justices of the Peace and one Constable elected in each district, by the qualified voters therein, except districts including county towns, which shall elect three Justices and two Constables. The jurisdiction of said officers shall be co-extensive with the county. Justices of the Peace shall be elected for the term of six, and Constables for the term of two years."

The argument, of course, is that a justice of the peace chosen by the commissioners of election is not elected by the qualified voters of a district and is accordingly not legally entitled to hold that office.

Legislation providing for the breaking of tie votes by election officers has prevailed in Tennessee since the organization of the state. Such provisions are found in chapter 9 of the Acts of 1796, and chapter 12 of the Acts of 1796. The first of these statutes controls elections for Governor and members of the Legislature and the second of these statutes controls elections for militia officers. In each of the statutes it was enacted that the returning officer of election should have the casting vote in case of a tie between candidates for office. So far as chapter 9 of the Acts of 1796 related to tie votes in

an election for Governor, that act was doubtless ineffective, since the constitution adopted in 1796 provided that, if two or more candidates for Governor should be equal and highest in votes, "one of them shall be chosen governor by joint ballot of both houses of the general assembly." Article 2, section 2. A similar provision was in the Constitution of 1834 (article 3, section 2), and a like provision is contained in section 2 of article 3 of our present Constitution.

The foregoing is the only constitutional provision we have ever had in reference to any elections in which tie votes may occur. That is to say, except in elections for Governor, no constitution of the state has ever undertaken to regulate the manner in which tie votes shall be handled. In other words, except in elections for Governor, our constitutions have left open the whole matter of breaking tie votes.

In many states statutes have been enacted providing that, when elections result in a tie between two of the candidates, the judges of election or other officers shall determine by lot which of the rival candidates shall be entitled to office. These statutes have been rather generally enforced without question of their validity. Cases dealing with such statutes are collected in notes, 17 Ann. Cas., 574, and 47 L. R. A., 551. Our attention has been called to only two decisions of courts of last resort which directly passed upon the validity of such statutes. The Supreme Court of Missouri held such an act bad under a constitutional provision similar to ours. *State ex inf. Crow* v. *Kramer,* 150 Mo., 89, 51 S. W., 716, 47 L. R. A., 551. The Supreme Court of Indiana has several times upheld a similar statute under a similar constitutional provision. The leading Indiana case is

*Johnston* v. *State,* 128 Ind., 16, 27 N. E., 422, 12 L. R. A., 235, 25 Am. St. Rep., 412.

Tested by a constitutional provision that an officer shall be elected, a statute providing that such officer shall be chosen by lot in case of a tie vote is on a par with a statute providing that an officer shall be selected by choice of election officers in case of a tie vote.

The Missouri decision above referred to rests largely on the premise that the constitution of that state conferred upon the Legislature power to provide for the breaking of tie votes in elections for several offices, but contained no provision conferring such power for breaking a tie vote in elections for the particular office in contest in that case.

The reasoning of the Indiana court is as follows:

"Constitutions are framed by existing and organized society, and are to be construed with reference to well known practices and usages. *State* v. *Noble,* 118 Ind., 350-361, 21 N. E., 244 [4 L. R. A., 101, 10 Am. St. Rep., 143]; *Durham* v. *State,* 117 Ind., 477, 19 N. E., 327; Cooley, Const. Lim. (5 Ed.), 73. We know that the practice of determining a tie vote by lot prevailed before our constitution was adopted, and it is our duty to presume that the framers of that instrument were not ignorant or unmindful of this ancient usage. It is therefore no more than reasonable to hold that a statute providing for an election by ballot is valid, although it also provides for determining a tie vote by lot; for the framers of the constitution may well be deemed to have had this usage in view, and to have intended that it should be resorted to in case where an election should result in a tie between opposing candidates. Such a statute as the one before us does give the electors an opportunity to

vote by ballot, and affixes to each vote all the force it is possible to assign it. In no respect is the elector's right abridged or limited; all that is done is to provide that, in cases where the electors fail to make a choice, the choice may be determined by lot between the candidates who have received the highest number of votes. This course gives to all the votes cast full weight and force, and prevents the nullification of the election, where a tie vote results. Unless there is power in the general assembly to provide for the determination of a tie vote, an incumbent of an office might hold far beyond his term, since it is conceivable that many elections might result in a tie.'' *Johnston* v. *State, supra.*

In addition to the two authorities just cited, we are referred to *State ex rel. Brown* v. *Boden,* 51 N. J. Law, 114, 16 A., 58, which considered a statute providing that the town committee, where two or more candidates had an equal number of votes for the same office at an annual election might choose between such candidates having an equal number of votes. It was said that such a statute was not an unconstitutional limitation of the right of voting by free ballot. To the contrary is the report of a congressional committee in the election case of *Reed* v. *Cosden,* 1 Clarke and H. Cong. Elect. Cas., 384, in which the committee held bad, under the Constitution of the United States, a Maryland statute authorizing the Governor of that state to break a tie vote in an election for Representative in Congress.

■■ As above seen, the Legislature of Tennessee, more than 140 years ago, assumed the right to enact legislation for the purpose of breaking tie votes in elections for office, where the constitution was silent. Several statutes of this nature have been passed. During this

period, two new constitutions have been framed and adopted by the people of the state. Neither the Constitution of 1834 nor the Constitution of 1870 undertook any restriction upon the power of the Legislature in this respect, except in cases where there was a tie vote in an election for Governor. Neither of these constitutions provided any method for settling tie votes in elections for other offices. Such being the situation, bearing in mind that the legislative power of the state is unrestricted except by constitutional limitations, we think the power of the Legislature here assailed has been too long asserted and too long recognized to be challenged successfully at this date.

The General Assembly of 1796 and subsequent legislatures construed the Constitution of 1796 to leave the matter of the regulation of tie votes, except in elections for Governor, to the legislative body. This construction was necessarily known, but two subsequent constitutions were adopted with no further restriction upon the power of the Legislature in this particular than was contained in the first constitution of the state. Such action of the Constitutional Convention of 1834 and of the Constitutional Convention of 1870 must be treated as an approval of the legislative construction of the Constitution of 1796.

For these reasons, the judgment of the court below is affirmed.