WALDAUER *et al. v.* BRITTON *et al.*

*(Nashville,* December Term, 1937.)

Opinion filed March 5, 1938.

652

Edwin F. Hunt and Dudley Porter, Jr., Assistant Attorneys-General, and Charles L. Cornelius, Thos. H. Malone, Wm. J. Wade, and J. H. Ballew, all of Nashville, for appellants.

K. T. McConnico, Roberts & Roberts, and Jay G. Stephenson, all of Nashville, and Charles M. Bryan and F. H. Gailor, both of Memphis, for appellees.

Mr. Justice McKinney delivered the opinion of the Court.

By chapter 2, Public Acts of the Third Extraordinary Session of 1937, the Legislature amended sections 1955, 1956, 1957, 1958, 1963, and 1964 of the Code, which relate to the State Board of Elections. The principal amendment added three new members to the board, to be chosen by the Secretary of State, the Comptroller, and the Treasurer, or a majority of them. The three old members of the board were continued in office during the terms for which they were elected, the provision as to their compensation was not changed, but their duties, to some extent, were diminished.

The bill herein was filed by two of the old members of the board for the purpose of having said amendatory act declared unconstitutional.

Preliminarily, it may be stated that complainants are estopped from questioning the validity of the law under which they were elected, they having acted thereunder and accepted its benefits. In *Collier v. Montgomery County*, 103 Tenn., 705, 714, 715, 54 S. W., 989, 991, it is said:

"In Black, Const. Law, section 5, it is said: 'In a country governed by a written constitution, which is of

supreme power over the lawmaking power, and to which all ordinary legislation must bend, an unconstitutional law is void and of no effect, and in fact is not law at all; yet so long as it stands on the statute book, unrepealed, it will have the presumptive force of law, unless the proper courts have pronounced its invalidity.' And again: 'Persons may be estopped from denying the constitutionality of a statute by participating in procuring its passage, by acquiescing in it after its passage, or by accepting benefits under it, although it may be invalid as to all other persons; and an individual has no right to complain that a statute is unconstitutional after he has endeavored to take benefits under it, to the injury of others.' Black, Const. Law, section 35, citing *Ferguson* v. *Landram,* 5 Bush [Ky.], 230, [96 Am. Dec. 350]; *Hansford* v. *Barbour,* 3 A. K. Marsh. [Ky.] 515.

"In the case of *People* v. *Bunker,* 70 Cal., 212, 11 P., 703, it is said an officer who has acted and received money under an act cannot contest its constitutionality.

"Again: 'One who has accepted an office having at least a potential existence, and has received the emoluments of it, is estopped to show, to his own advantage, that the office had never been legally created, because it was not done in a proper mode, as by ordinance.' *Buck* v. *Eureka* [109 Cal. 504], 42 P., 243, 30 L. R. A. 409."

█ The general rule, supported by many authorities, is thus stated in 11 American Jurisprudence, 767:

"Estoppel is most frequently applied in cases involving constitutional law where persons, in some manner, partake of advantages under statutes. The rule is well settled that one who voluntarily proceeds under a statute and claims benefits thereby conferred will not

be heard to question its constitutionality in order to avoid its burdens."

The rule was applied by this court in *Saylor* v. *Trotter,* 148 Tenn., 359, 255 S. W., 590.

Likewise, a corporation cannot attack as unconstitutional the law under which it claims to exist as a corporation. *Nolensville Turnpike Co.* v. *Quimby,* 27 Tenn. (8 Humph.), 476.

■ The principal attack upon the act is based on the alleged lack of approval by a constitutional majority in the House of Representatives. This question was ruled adversely to complainants at our last opinion session in the case of *State ex rel.* v. *Shumate,* 172 Tenn., 451, 113 S. W. (2d), 381.

■■ It is next insisted by complainants that the amendatory act takes from them certain property rights, in that it deprives them of the functions of their offices in violation of article 1, section 8, of the State Constitution and the Fourteenth Amendment to the Federal Consitution. In other words, that they have not as much power or authority under the amendatory act as they possessed under the original act. They cite no authority that supports this insistence, and such is not the law. They do cite a long line of decisions by this court to the effect that a colorable change in the form of government for the purpose of putting one set of men out of office and another set in office is unconstitutional. In each of these cases some official, or officials, had been legislated out of office. These cases have no bearing upon the question we are considering, since complainants have not been deprived of their office. It should be borne in mind that the State Board of Elections is not a constitutional office, but one created by the Legisla-

ture, just as it has brought into being numerous executive and administrative boards and commissions to administer the affairs of state. The legislative power of the state is unrestricted except by constitutional limitations. *Bowling* v. *Carnahan,* 171 Tenn., 26, 100 S. W. (2d), 232; *Prescott* v. *Duncan,* 126 Tenn., 106, 148 S. W., 229; *Motlow* v. *State,* 125 Tenn., 547, 145 S. W., 177, L. R. A. 1916F, 177; *Wright* v. *Cunningham,* 115 Tenn., 445, 91 S. W., 293; *Dayton, etc., Co.* v. *Barton,* 103 Tenn., 604, 53 S. W., 970; *Henley* v. *State,* 98 Tenn., 665, 41 S. W., 352, 1104, 39 L. R. A., 126; *Davis* v. *State,* 71 Tenn. (3 Lea), 376, 377. Says the Supreme Court of Alabama, in *White* v. *Decatur,* 225 Ala., 646, 144 So., 873, 86 A. L. R., 914, 916:

"It is well settled that the power of the Legislature, except as restrained by the Constitution, is supreme in the enactment of statutory law and in the creation of subordinate governmental agencies, and in prescribing their powers and duties."

In 46 C. J., 1035, 1036, it is said:

"The legislature with power to create an office may fix its duties, and generally may fix the duties of offices except as inhibited by the constitution. An officer accepting office does so subject to the possibility that his duties may be increased or diminished, and in the absence of constitutional restriction the legislature may do so at its pleasure. Thus the legislature may, from time to time, change the duties of offices created by itself. The legislature, moreover, may within reasonable limits, increase or abridge the duties of a constitutional office, but they cannot be so changed as to destroy the powers of the office or essentially to alter it."

█ As to whether a particular function of the state

requires one or a dozen persons to administer it is a matter for the Legislature to determine. Since a private corporation increases or reduces the number of its officers and the membership of its board of directors to meet changed conditions, we see no reason, upon principle, why a public corporation should not be accorded the same privilege.

Certainly, the power to create the agency and prescribe its duties and powers carries with it the authority to reduce or increase the membership of such agency and to diminish or increase its duties and powers, from time to time, as the exigencies require. It is not unusual for a Legislature or Congress to increase the membership of a court, as was done by the Legislature of this state when the act creating the Court of Chancery Appeals, Act 1895, chapter 76, was amended by chapter 82, Acts 1907, whereby the name was changed to the ''Court of Civil Appeals,'' and the number of judges increased from three to five. The validity of the act was upheld by this court in *Memphis St. Railroad Co.* v. *Byrne,* 119 Tenn., 278, 104 S. W., 460. By chapter 100, Pub. Acts 1925, the name of the Court of Civil Appeals was changed to ''Court of Appeals,'' and its membership increased from five to nine. In *Hancock* v. *Davidson County et al.,* 171 Tenn., 420, 435, 436, 104 S. W. (2d), 824, 829, it is said:

''There has been some intimation that a statute transferring the authority and jurisdiction of justices of the peace to another court could only be sustained if applicable to the whole state. Such an idea, however, was long ago rejected in this state. We have a number of special courts in particular counties to which the jurisdiction of the circuit in some instances, of the chan-

cery court in other instances, of the criminal court in other instances, has been transferred. In a few instances the jurisdiction has been transferred from other courts to a special court set up for certain districts of the particular county. See *Ellis* v. *State,* 92 Tenn., 85, 20 S. W., 500; *Wilcox* v. *State,* 50 Tenn. (3 Heisk.), 110, and the note of Judge Nicholson to the latter case, Id., p. 114.

"*Prescott* v. *Duncan,* 126 Tenn., 106, 137, 148 S. W., 229, very elaborately considers the constitutional prerogatives of the justice of the peace and shows that they are very few—that his jurisdiction and powers are largely subject to the will of the Legislature."

By chapter 237, Private Acts 1911, the administration of the affairs of Shelby county were transferred from the county court to a new board of commissioners. This court, in *Prescott* v. *Duncan, supra,* sustained the constitutionality of the act, and expressly held that the Legislature may deprive the county court of all powers not conferred upon it by the Constitution, and that such transfer of power did not deprive those officials of any property rights. This ruling was approved and followed in the recent case of *Mel Troutman et al.* v. *J. D. (Val) Cripper et al., Knox Equity,* decided at Nashville on May 8, 1937,* in which the court sustained an act of the Legislature transferring the administration of the affairs of Knox county from the county court to a board of commissioners. We hold, therefore, that the complainants have not been deprived of any of their property or constitutional rights by the act in question.

It is next contended by complainants that this amendatory act imposes a political qualification for office

*No opinion for publication.

in violation of article 1, section 4, of the State Constitution, which is as follows:

"That no political or religious test, other than an oath to support the Constitution of the United States and of this State, shall ever be required as a qualification to any office or public trust under this State."

The provisions of the old act under which complainants have been functioning, as set forth in the Code, are as follows:

1956. "Not more than two of the three members of the board shall be of the same political party, and the representatives shall be of the majority and minority parties and shall be *bona fide* members of the party they are elected to represent. Any two members shall constitute a quorum for the transaction of business."

1965. "By minority party in preceding sections is meant the party polling in the state the second highest number of votes for presidential electors at the presidential election immediately preceding the appointment of officers under this article."

Section 2 of the amendatory act provides:

"Be it further enacted, That Section 1956 of the Code of Tennessee be and the same is hereby amended to read as follows:

" 'Not more than four of the six members of the Board shall be of the same political party, and the representatives shall be of the majority and minority parties and shall be *bona fide* members of the party they are elected to represent. Any four members shall constitute a quorum for the transaction of business. Except as otherwise provided in this statute, all questions shall be determined by a majority vote of the members present. In the event of a tie vote upon any question,

the Secretary and President of the Board shall certify to the Secretary of State the fact of such tie vote. Thereupon, the Secretary of State, the Comptroller, and the Treasurer of the State shall be entitled to cast a vote, in all respects as if members of said State Board of Elections, on the particular question concerning which the tie vote has been certified, and said question shall be determined by a majority vote cast upon such question, including those of the Secretary of State, the Comptroller and the Treasurer.' "

It will thus be seen that the qualifications for office are identical, and complainants are estopped to raise this question.

In *Richardson* v. *Young*, 122 Tenn., 471, 125 S. W., 664, 676, this court, in construing the act under which complainants in the present suit were elected to membership on the State Board of Elections, in passing upon article 1, section 4, of the Constitution, prohibiting political tests for office, said:

"The complainants, upon this record, have no interest in this question, and cannot call for a determination of it, unless, if sustained, the effect would be to render the entire act void. They are not interested in these particular amendments as taxpayers, because no burdens are imposed by them, nor as citizens, since they are not affected in any way not common to all the citizens of the state. *Patton* v. *Chattanooga*, 108 Tenn., 197, 65 S. W., 414.

"We are of opinion that, if these amendments were invalid, the act would be valid as to other matters."

Complainants insist that they also instituted this suit in the capacity of taxpayers, and, as such, are interested in this amendatory act, hence the foregoing

rule does not apply to them. We find it unnecessary to pass upon this question since complainants are estopped to raise it. But if the amendment was invalid, it could be elided, as was held in *Richardson* v. *Young*. That case is an authority against complainants upon the various questions raised herein, with the exception of the manner in which the amended act was passed in the House of Representatives.

It is further alleged that the act violates article 1, section 8, and article 11, section 8, of the State Constitution, and the Fourteenth Amendment of the Federal Constitution, in that the filling of the three vacancies was delegated to the Secretary of State, the Comptroller, and the Treasurer. This question was decided contrary to this contention in *Richardson* v. *Young, supra.* We quote from the opinion in that case the following:

"The Constitution commits the power of appointment of certain constitutional officers to each of the departments. The Legislature is vested with the most important appointive power not reserved to the people; the courts with that next in order of importance; and that of the executive is confined to the appointment of an adjutant general and his staff officers, and filling temporarily certain vacancies. The election of all officers and filling all vacancies, not expressly provided for, is committed to the Legislature, to be exercised as it may direct. The whole appointive power is thus expressly disposed of, and there is nothing left for implication or construction."

The point is made that the act complained of violates article 2, section 17, of the State Constitution, which provides: "All acts which repeal, revive or amend

former laws, shall recite in their caption or otherwise, the title or substance of the law repealed, revived or amended.''

This contention is based upon section 6 of the act, which provides:

''Be it further enacted, That section 1964 of the Code of Tennessee be and the same is hereby amended so as to read as follows:

'' 'Said State Board of Elections shall have full power to remove any commissioner of elections for cause or failure to perform his duties and the decision of the said State Board of Elections shall be final and shall not be subject to review by any other body or tribunal under Section 9008 of the Code or otherwise. Such removal shall be made only after due notice and a hearing upon the charges. The vacancy thereby caused shall be filled by the members of that party who in the first instance appointed the commissioner so removed.' ''.

Section 9008 of the Code provides a method of appeal from the final judgment of any board or commission to the court. It is insisted that section 6 of the 1937 Act amends section 9008 of the Code without reciting in the caption the title of the law so amended. Complainants have no interest in this question since it in no wise concerns them. But if they were affected by it, and if section 9008 of the Code be considered as amended by the challenged act, then it is only an implied, as distinguished from an express, amendment, in which event the caption does not have to recite the title or substance of the act which is amended. *Koen* v. *State,* 162 Tenn., 573, 39 S. W. (2d), 283; *Daniels* v. *State,* 155 Tenn., 549, 296 S. W., 20; *Wright* v. *Donaldson,* 144 Tenn., 255, 230 S. W., 605; *Southern Railroad Co.* v.

*Memphis,* 126 Tenn., 267, 148 S. W., 662, 41 L. R. A. (N. S.), 828, Ann. Cas., 1913E, 153; *State* v. *McConnell,* 71 Tenn. (3 Lea), 332.

It is further contended that the involved act confers judicial power upon an administrative body, in violation of article 2, section 2, of the State Constitution. Upon this question we quote from the bill as follows:

"Complainants further aver that the said Act is unconstitutional and void and violative of Article 11, Section 2, of the Constitution of the State of Tennessee, in that it rests upon the Secretary of State, the Comptroller and the Treasurer of the State of Tennessee judicial functions, permitting them under certain circumstances to sit and try questions of a judicial character as a member of the State Board of Elections.

"That the members of the State Board of Elections are expressly given judicial power in trials held to remove from office the Commissioner of Elections of the various Counties of the State of Tennessee, and the said chapter 2 of the Third Extra Session of 1937 authorizes the said Secretary of State, the Treasurer and the Comptroller to sit and decide upon these judicial questions whenever there shall be a tie among the members of the Board upon the question of the right to continue in office of any Commissioner of Elections from any County in the State."

The statute under which complainants hold office expressly authorizes the State Board of Elections to remove any Commissioner of Elections for cause; hence complainants are in no position to insist that in so doing they are exercising judicial power. While under our decisions such authority may be *quasi* judicial, it does not make the members judicial officers. *Richardson* v.

*Young, supra; House* v. *Creveling,* 147 Tenn., 589, 250 S. W., 357; *Bank of Commerce & Trust Co.* v. *Senter,* 149 Tenn., 569, 260 S. W., 144; *Steele* v. *Louisville & N. R. R. Co.,* 154 Tenn., 208, 285 S. W., 582; *Richardson* v. *Reese,* 165 Tenn., 661, 57 S. W. (2d), 797. Since the power conferred upon the State Board of Elections to remove is not judicial, for the same reason such authority conferred upon the Secretary of State, Comptroller, and Treasurer, in case of a tie, is not a delegation of judicial power; no more so than is the power conferred upon the county commissioners of elections to cast the deciding vote in case of a tie between two or more persons for a county office, as provided by section 2097 of the Code. This statute was held valid in the recent case of *Bowling* v. *Carnahan,* 171 Tenn., 26, 100 S. W. (2d), 232.

The act is finally challenged upon the ground that it creates three additional members of the State Board of Elections, one of whom is to serve until 1939, one until 1941, and the other one until 1943. This insistence is based upon article 11, section 17, of the State Constitution, which provides as follows:

"No county office created by the Legislature shall be filled otherwise than by the people or the County Court."

There is no such provision in the Constitution with reference to state officers, and members of the State Board of Elections are state officers. *State ex rel.* v. *Bratton,* 148 Tenn., 174, 253 S. W., 705.

It might be stated, furthermore, that the law under which complainants hold office contains the same provisions as to the terms of office; hence, for the reasons heretofore stated, they are estopped from raising this question.

 For the foregoing reasons, we are of the opinion that chapter 2 of the Third Extraordinary Session of the 1937 Legislature is constitutional and valid.

The decree of the chancellor overruling the demurrers of the defendants is accordingly reversed, the demurrers sustained, and the bill dismissed.