CLARK *v.* SMITH.

(*Knoxville,* September Term, 1951.)

Opinion filed December 14, 1951.

WILKERSON & WILKERSON, of Chattanooga, for complainant.

CHARLES A. NOONE, of Chattanooga, for defendant.

MR. JUSTICE GAILOR delivered the opinion of the Court.

This is a controversy over the tenure of the office of County School Superintendent in Hamilton County. On July 2, 1951, the Quarterly County Court elected defendant, Roy C. Smith, County Superintendent, and on the next day the complainant, Marshall Clark, who had previously held the office, filed the bill in this cause, to enjoin the defendant from taking office on the ground that the Private Act providing for his election, was unconstitutional. The bill was met by demurrer, one ground of which was that the complainant was estopped to raise the question of the unconstitutionality of the Private Act, and the demurrer was overruled by the Chancellor. Saving and reserving the grounds of the demurrer, the defendant then filed an answer, and with it exhibited copies of the minutes of the Quarterly County Court, which show the action of that body with regard to the election of County School Superintendents from 1939 through the election of July 2, 1951.

The cause was finally heard by the Chancellor on bill, answer, and stipulation that the minutes of the Quarterly Court were correct as filed, and he, holding that Chapter

332 ˙of the Private Acts of 1943, was unconstitutional, sustained the prayers of the bill and permanently enjoined the defendant from taking office. From this decree the defendant has perfected an appeal and assigned errors. We find it necessary to consider only the insistence that the complainant was precluded from attacking the constitutionality of the Private Act.

Under the law then existing, which provided for election by the Quarterly Court and a two-year term, *Gallien* v. *Miller*, 170 Tenn. 93, 92 S. W. (2d) 403, on April 3, 1939, complainant was elected County School Superintendent, and served as such until April 1941, when one Rankin was elected to succeed him. Rankin served until January 1943, when complainant was again elected and served for two years. At the meeting of the Quarterly Court on January 1, 1945, a motion was carried that the election of the County School Superintendent be deferred until February, when, at a meeting of the court on the 5th of February, 1945, the complainant was again elected.

In the meantime the Legislature, at its regular session of 1943, had passed two laws affecting the office. The general law, Chapter 36, Public Acts of 1943, effective February 3, 1943, provided that after the first meeting of the Quarterly Court in 1945, the County Superintendent should be elected for a four-year term, and this Legislature also passed Chapter 332 of the Private Acts of 1943, effective February 9, 1943, providing that in Hamilton County, the Superintendent of Education should be elected by the Quarterly County Court for a two-year term. Both these Acts, therefore, had been passed when the Quarterly County Court of Hamilton County took up the election of the County Superintendent at its special meeting on February 5, 1945, when, without specifying the length of his term, the court elected the complainant

County Superintendent. An excerpt from the minutes of the Quarterly Court of Tuesday, April 3, 1945, is as follows: "The minutes were read and approved with the correction of Marshall Clark, Supt. of Schools elected for two year term."

On January 6, 1947, a motion was made in the court that the election of the County Superintendent be deferred until the April meeting, and on April 7, 1947, all business was deferred until the July meeting. On July 7, 1947, Clark was again elected Superintendent of Schools. When the Quarterly Court took up the question of the election of the County Superintendent in January 1949, the election was deferred, and a resolution was passed which contains the following: "And whereas Mr. Clark contends that under the provisions of this Private Act, he is entitled to a full two year term from the date of his election, which raised a legal question that can only be settled by our Courts or Legislative changes."

At the next meeting of the court on April 4, 1949, the complainant was elected to an unspecified term, but he held office until July 1951, when the defendant was elected to succeed him. From the minutes of the Quarterly Court which are properly before us, it is clear beyond doubt, that both the complainant and the court were operating under the Private Act, and that the County Superintendent was elected for successive two-year terms, and acted accordingly. From the resolution passed in January 1949, it is clear that both the court and the complainant recognized the confusion that existed as a result of the passage of the general and conflicting Private Act by the Legislature of 1943, yet neither party did anything to clear the situation by appropriate litigation. On the contrary, operating under the Private Act, the court proceeded to elect complainant for a two-

year term, which the complainant accepted. His conduct bore out the insistence stated in the resolution of January 1949, that he was entitled to a "full two-year term." These being the undisputed facts, clearly the complainant is estopped to question the constitutionality of the Private Act under which he elected to hold his office. *Collier* v. *Montgomery County,* 103 Tenn. 705, 54 S. W. 989; *Saylor* v. *Trotter,* 148 Tenn. 359, 375, 255 S. W. 590; *Waldauer* v. *Britton,* 172 Tenn. 649, 113 S. W. (2d) 1178; 11 Am. Jur., Constitutional Law, 767.

In a supplemental brief filed since the argument, appellee insists that under *Kivett* v. *Mason,* 185 Tenn. 558, at page 565, 206 S. W. (2d) 789, the appellee was not estopped to assail the constitutionality of the Private Act of 1943, since that Act was an amendatory Act which did not create the office of Superintendent of Schools for Hamilton County. Nothing which was said in the opinion of *Kivett* v. *Mason,* supra, was meant to overrule or restrict the rule stated in *Saylor* v. *Trotter,* supra, where the Sheriff was held to be estopped to assail the Anti-Fee Bill, although that legislation worked an amendment to the duties and salary of the office, but did not create the office of Sheriff; nor the rule stated in *Waldauer* v. *Britton,* supra, where complainants were held to be estopped to assail the constitutionality of an express amendment to the free-existing law creating the Board of Election Commissioners under which complainants held office, and furthermore, this court enforced the estoppel against complainants although Waldauer and his co-complainant filed the bill attacking the constitutionality of the amendment as soon as it was passed by the Legislature and before they had served as Election Commissioners under its provisions.

Although, in strict technicality, the Private Act of 1943 did not create the "office" of County Superintendent of Schools in Hamilton County, it did create the "term" of that office, and in legal parlance, an office without a "term" is not an office. "Office for a term" has been described as an entity. *Day* v. *Sharp*, 128 Tenn. 340, 346, 161 S. W. 994, 996.

In any event, we hold that the evidence to support the estoppel goes beyond presumption and is positive. After the Private Act of 1943 was in effect, the minutes of the Quarterly Court for April 3, 1945, show Clark's election to a two-year term (under the Private Act). He was re-elected in 1947, and in 1949, the minutes show that Clark was insisting that his term was for two years (under the Private Act). The only possible inference from the evidence of the minutes of the Quarterly Court is that the County and Clark were operating under the Private Act, and that Clark took and held his office under his provisions.

Since we hold that complainant cannot attack the constitutionality of the Private Act under which he took and held his office, we find it unnecessary to pass upon the constitutionality of the Private Act. The situation is identical with that presented in *Saylor* v. *Trotter*, supra, when the Anti-Fee Bill was under consideration. Both parties were anxious to have the validity of the Anti-Fee Bill determined, and after its first opinion, "two strong petitions to rehear" were filed, nevertheless, Chief Justice GREEN, speaking for the court, refused to pass upon the constitutionality of the Act because the complainant was estopped to attack it.

For the reasons stated, and under the authorities cited, the decree is reversed and the injunction dissolved at complainant's cost.